[L. A. No. 18001. In Bank. Nov. 27, 1942.]

THE PENNSYLVANIA RAILROAD COMPANY (a Corporation), Respondent, v. MIDSTATE HORTICULTURAL CO., INC., Appellant.

Sullivan, Roche & Johnson, Theodore J. Roche and Kellas & Lamberson for Appellant.

W. H. Stammer and Galen McKnight for Respondent.

SHENK, J.—This is an appeal from a judgment in favor of the plaintiff for the sum of $13,678.86, representing unpaid freight charges. The defendant was the consignor of interstate shipments of grapes over the plaintiff's and its connecting lines. The complaint was filed more than three years after the cause of action accrued. The plaintiff pleaded a written agreement of waiver of the statute of limitations executed by the defendant. The defendant interposed a demurrer on the ground that the action was barred by the provisions of section 16, paragraph (3) (a) of the Interstate Commerce Act. The demurrer was overruled. In its answer the defendant admitted the execution of the alleged agreement, but denied its validity as an effective waiver of the statute. The action was tried on the issues raised by the complaint and answer. On the findings of fact and conclusions of law judgment was entered in favor of the plaintiff for the amount of the unpaid freight charges and interest. If the court was correct in its ruling on the demurrer, the judgment is supported by the record.

The facts are undisputed. In October and November, 1932, the defendant consigned twenty-one carloads of fresh grapes from points in Fresno County, California, which ultimately were delivered to Jerome Distributing Company as consignee in the State of New York. The latter company on November 19, 21, and 22, 1932, issued to the plaintiff three checks which covered all of the freight items involved in this controversy and for which the consignee, referred to as the Jerome Company, received freight bills receipted by the plaintiff. The receipted bills were transmitted to the defendant who in turn credited the Jerome Company's account.

In the meantime the checks of the Jerome Company were refused payment by the drawee bank because of insufficient funds. The plaintiff filed an action against the Jerome Company which proceeded to judgment, but nothing was collected thereon. Toward the close of 1935 the plaintiff made demand on the defendant for payment of the freight charges and threatened action in the event of nonpayment prior to the imminent expiration of the three-year statutory period of limitations. The defendant required time for investigation

of the claim. In order to avoid immediate commencement of the action the defendant, on October 25, 1935, executed and delivered to the plaintiff the writing alleged in the complaint by which it assumed to extend for a period of about three months the time within which the railroad company could commence an action for the recovery of the freight charges. The express consideration for the promise on the part of the shipper was the forebearance by the railroad company to bring suit prior to the expiration of the statutory period as extended by the waiver or such earlier time as the shipper should definitely refuse to pay the claim. On December 26, 1935, the defendant shipper definitely refused to pay the freight charges. The present action was commenced on December 31, 1935, which was three years and forty days after the last shipment was delivered.

The question is whether the written agreement of waiver of the statute of limitations is binding on the defendant. The sufficiency of the consideration for the agreement is not questioned.

The answer to the question is controlled by the federal statutes and the federal courts' construction thereof as applied to similar facts. (See *New York Central R. R. Co.* v. *Frank H. Buck Co.*, 2 Cal.2d 384 [41 P.2d 547] ; *Adams Express Co.* v. *Croninger*, 226 U.S. 491 [33 S.Ct. 148, 57 L.Ed. 314].)

Section 16(3)(a) of the Interstate Commerce Act (49 U.S.C.A. § 16, par. (3)) reads: ''All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after.'' In the same paragraph of that section are similar provisions limiting the time within which shippers may file complaints with the commission for recovery of damages not based on overcharges (''within two years from the time the cause of action accrues, and not after''), and for recovery of overcharges (''within three years from the time the cause of action accrues, and not after'').

The only reported decision involving the validity of a written agreement by a shipper to waive such a statute of limitations is by a federal court and it supports the plaintiff's position. (*Pennsylvania R. Co.* v. *Susquehanna Collieries Co.*, 23 F.2d 499.) In that case, decided in 1927, the same plaintiff, Pennsylvania R. Co., brought an action in

the United States District Court against Susquehanna Collieries Co. to recover demurrage charges. The action was not begun within the three years limited by section 16, paragraph 3 of the Interstate Commerce Act. In excuse the plaintiff pleaded that within the three-year period the defendant had entered into a written agreement to waive the statute of limitations on condition that suit be not brought within the statutory period, and that the agreement was still in effect. The defendant there interposed a demurrer and argued the same contention which is made by the defendant in this case, namely: that the right to recover charges was a "right conferred by statute, to which is annexed as a condition that suit to recover must be brought within the statutory period, and hence that the right of action is barred, and cannot be prolonged or kept alive by an agreement such as would apply to an ordinary action." The district court in overruling the demurrer expressed the opinion that the right of action to recover such charges, as distinguished from a right of action created by the Interstate Commerce Act, grew out of contract, was not necessarily extinguished by the expiration of the statutory period, and could be kept alive by the written agreement of the parties. The court considered that this was so even though the charges must be prescribed in a tariff filed with the Interstate Commerce Commission, and could not be departed from or varied by the parties. The court said: "The cases cited, arising under other provisions of the same section, have no application. In those cases the right of action did not grow out of contract, but out of the statute." It was also pointed out that in none of the cited cases was it held that such a contractual right may not be kept alive by a voluntary agreement of the parties. Apparently no reported case since that time has involved such a written waiver of the statute of limitations. As a consequence the decision of the district court in the Susquehanna case has been neither disapproved nor criticised in the fourteen-year period since its rendition. It is not contended by the defendant that shippers in the meantime have not signed time limitation extension agreements. If they have done so, it may be assumed that they considered them binding pursuant to the decision in the Susquehanna case, at least until the present litigation.

The defendant nevertheless contends that the decision in

the Susquehanna case may not be considered as authoritative in view of language employed in decisions by appellate courts in the federal jurisdiction. The defendant relies especially on *A. J. Phillips Co.* v. *Grand Trunk Western Railway Co.*, 236 U.S. 662 [35 S.Ct. 444, 59 L.Ed. 774]; *Louisville & N. R. Co.* v. *Cory,* 54 F.2d 8; *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.*, 88 F.2d 459; and *Zang* v. *Railway Express Co.*, 130 Ohio St. 17 [196 N.E. 901], as contrary to the decision in the Susquehanna case.

Generally, a statute of limitations may be extended or waived. (*Wells Fargo & Co.* v. *Enright,* 127 Cal. 669 [60 P. 439, 49 L.R.A. 647]; *Tebbets* v. *Fidelity & Casualty Co. of New York,* 155 Cal. 137 [99 P. 501]; 37 C.J., p. 723, § 41.) The general rule governs unless the action is created by statute and the language of definition requires a construction that the cause of action is destroyed by the lapse of the period of limitations provided by the statute. Under that exception to the rule the expiration of the time within which suit must be brought operates to terminate the obligation as well as to bar the remedy. (34 Am.Jur., p. 17.)

In the cases relied on by the defendant the courts were applying the exception to the general rule. In the Phillips Co. case the shipper sought to recover an alleged overcharge— an amount paid pursuant to the contract, but which was in excess of an alleged reasonable rate. Other shippers had commenced a proceeding before the Interstate Commerce Commission to determine the reasonableness of the rate, and the commission had determined that the rate was unreasonable to a certain extent. The shipper, Phillips Co., which had not joined in the proceedings before the commission, brought an action to recover the excess four years after the cause of action accrued. The plaintiff contended that the state statute of limitations applied. It was held that the action should have been brought within the two-year period provided by the Interstate Commerce Act. In connection with the contention that under the conformity act and the Michigan practice the question could not be raised by demurrer the court said: "But that rule does not apply to a cause of action arising under a statute which indicates its purpose to prevent suits on delayed claims, by the provision that all complaints for damages should be filed within two years *and not after*. Under such a statute the lapse of time not only bars

the remedy but destroys the liability. . . . To permit a railroad company to plead the statute of limitations as against some and to waive it as against others would be to prefer some and discriminate against others in violation of the terms of the Commerce Act which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discriminations relate not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier. The Railroad Company therefore was bound to claim the benefit of the statute here. . . . For when it appeared that the complaint had not been filed within the time required by the statute it was evident, as a matter of law, that the plaintiff had no cause of action.''

In the case of *Louisville & N. R. Co.* v. *Cory*, the plaintiff recovered judgment against the railroad company for breach of the common law duty to furnish cars for interstate transportation of coal. Suit had been brought more than two years after the cause of action accrued. It was urged by the plaintiff that the limitation of the Commerce Act had no application, but that the state enactment applied where the declaration alleged a right of recovery at common law. The court held that the two-year period of the Commerce Act applied ''to all actions involving subject-matter directly covered by the act and as to which the shipper is given the right to file a petition for reparation order with the Commission. . . . The enactment of the statute of limitations prescribing the time beyond which claims may not be asserted against interstate carriers is essentially a matter of regulation of interstate commerce, and the requirement of uniformity of treatment would be defeated by permitting one period of limitation where the complaint is filed before the commission, and the varying periods of limitations of the different states, where a suit is brought in a court of competent jurisdiction,'' citing the Phillips Co. case.

In *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.* the carrier sought recovery of freight undercharges, that is, the amount over the contract rate which it was required to collect in compliance with the act. The action was brought more than three years after the cause of action accrued. The defendant pleaded the limitation. It was held that even if

the shipper "had failed to plead it, it would not thereby have conferred jurisdiction upon the court over the claim which had already been barred at the time the action was brought."

None of the foregoing cases involved an express agreement by the shipper to waive the statute of limitations. The first two were actions by the shipper. The Wisconsin Bridge Co. case, in which the carrier sued for undercharges, involved a statutory cause of action, as distinguished from a contract right. The quoted language of the court was confined to a consideration of an assumed failure to plead the statutory limitation in such a case.

The case of *Zang* v. *Railway Express Co.* is of no material assistance to the defendant. There, as in the Phillips Co. and Louisville & N. R. Co. cases, the shipper sued for damages, and the court held that the three-year limitation of the Commerce Act in force at the time the cause of action accrued barred the right of recovery, even though in a later amendment the limitation was omitted. It was said: "There is a marked distinction between our statute of limitation affecting the remedy only which must be specially pleaded as a defense, and special statutory limitations taking away the right itself. In the latter class, time is of the essence of the right, and the lapse of the prescribed period in which an action may be commenced wholly extinguishes the right." It was concluded that the alleged cause of action was of the nature of a right extinguished by the expiration of the statutory limitation.

Language in other cases following those cited is also relied on by the defendant, but none of them involved a written or any waiver of the applicable statute of limitations. Consequently, in no case, except the case of *Pennsylvania R. Co.* v. *Susquehanna Collieries,* did it become necessary to distinguish between a contract or common law right and a statutory right, for the purpose of considering the application of the general rule that a statute of limitation may be expressly waived.

The defendant contends that there can be no distinction between common law and statutory liability under the limitation clause of the Interstate Commerce Act. However, the Supreme Court of the United States has had occasion to note the distinction between causes whose existence is controlled by time limiting provisions and causes as to which the stat-

ute is remedial only. It distinguished the two classes in *William Danzer & Co.* v. *Gulf & Ship Island Railroad Co.*, 268 U.S. 633 [45 S.Ct. 612, 69 L.Ed. 1126], wherein it followed the Phillips Co. and other cases in holding that a cause of action for damages against the shipper belongs to the class whose existence is limited by the two-year period provided in the Commerce Act.

In considering the remedies preserved by section 22 of the Interstate Commerce Act the Supreme Court in *Pennsylvania Railroad Company* v. *Puritan Coal Mining Co.*, 237 U.S. 121, [35 S.Ct. 484, 59 L.Ed. 867], said that the act was both declaratory of existing common law and creative of new causes of action. It made the distinction between a common law right, such as a cause of action for damages for breach of duty to furnish cars of which state courts had concurrent jurisdiction, and created rights such as those which depended on administrative procedure and a preliminary finding by the commission. That case was followed in *Pennsylvania Railroad Co.* v. *Sonman Shaft Coal Co.*, 242 U.S. 120, 124 [37 S.Ct. 46, 61 L.Ed. 188], where the court reiterated the statement that existing rights and remedies not inconsistent with the act were preserved.

A similar distinction was noted by the Circuit Court of Appeals, Eighth Circuit, in *Button* v. *Atchison, T. & S. F. Ry. Co.*, 1 F.2d 709, which was an action by the carrier for undercharges. The action was filed more than three years after the cause of action accrued and the statute of limitations was relied upon by the defendant. The state statute provided for a three-year period of limitation. More than two years after the cause of action accrued the federal three-year statute was enacted. The plaintiff contended that the federal statute enlarged the right. The court stated that at common law the carrier could not have recovered from the shipper any additional sum as freight; that the carrier's right to maintain the action was created by the Commerce Act; and that the right ''was not created for its enrichment, but to protect the public against secret rebates and discriminations. It is not a right of contract or of property. . . . As to such a right the time limited for its enforcement is a constituent part of the right itself. The lapse of time not only bars the remedy, but destroys the liability,'' citing the Phil-

lips Co. and other cases. (See, also, *Pennsylvania R. Co.* v. *Miller,* 124 F.2d 160.)

 The defendant urges that judicial recognition of the waiver agreement would invite discriminatory preference by carriers, an evil which it was the purpose of the Commerce Act to avoid. Sections 2 and 6 of the act prohibit special rates, rebates, refunds and remissions. Section 3(1) provides that it shall be unlawful for any common carrier to make, give, or cause any undue or unreasonable preference or advantage in any respect whatsoever. However, the present problem cannot be resolved by a consideration of the question of unreasonable preference granted by the carrier to the shipper.

If we assume that the forbearance by the carrier under the written waiver of the shipper was a preference, and that the question is pertinent in this case, it does not follow that the forbearance under the circumstances was either forbidden or unreasonable. The main purpose of the agreement was not to extend credit to the defendant, but was to preserve the rights of the carrier. There is no justification for a conclusion that under the facts in this case the purpose was abused as a cover for extending an unreasonable preference. Moreover, the remedy for the giving of an unreasonable preference is the recovery of damages by the person discriminated against and who has been injured thereby. (§ 8, Interstate Commerce Act, 49 U.S.C.A.) An example is *Gamble-Robinson Commission Co.* v. *Chicago, N. W. Ry. Co.,* 168 F. 161 [94 C.C.A. 217, 16 Ann. Cas. 613, 21 L.R.A. N.S. 982], where an action was brought by a shipper who had not received the same credit terms accorded other shippers. The court said in that case that the Commerce Act left the carrier free to exercise all the rights and privileges under the common law insofar as they were not rendered unlawful by the act; that the act did not make all preferences or advantages unlawful, and that there was nothing unreasonable in requiring prepayment of freight in the case of one shipper and in extending credit to another. If in the present case the defendant's contention in this respect were to prevail, the result would be that the shipper who has been the recipient of the preference would be deemed injured thereby. Certainly he should not be heard to contend that injury to him has resulted because he is compelled to discharge his liability to pay lawful

freight charges—a liability which was created when the shipments were delivered and has never been discharged. The purpose of the act is to secure equal treatment to all shippers. It is founded on a sound public policy. But that policy should not permit the favored shipper to urge discrimination against others for the purpose of enabling it to escape a liability which it was otherwise bound to discharge.

■ The defendant finally contends that if its waiver of the statute be held sufficient and binding, its defense of estoppel against the carrier should not have been stricken by the court. The alleged estoppel was based on the act of the carrier in receipting the bills for freight when the Jerome Company's checks were delivered to it, and the subsequent crediting of the Jerome Company's account by the defendant on the faith of the receipts sent to it by the Jerome Company. It is the carrier's duty to collect all lawful freight charges. Under the contract here it was the consignor's obligation to pay them. It has been decided that the carrier cannot waive defenses and cannot be estopped (except by the running of the statute of limitations) from performing its duty to collect the charges. (See *New York Central R. R. Co.* v. *Frank H. Buck Co.*, 2 Cal.2d 384, 389 [41 P.2d 547]; *Texas & Pacific Railway Co.* v. *Leatherwood*, 250 U.S. 478, 481 [39 S.Ct. 517, 63 L.Ed. 1096]; *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.*, 241 U.S. 190, 197 [36 S.Ct. 541, 60 L.Ed. 948]; *Chesapeake & Ohio Ry. Co.* v. *Martin*, 283 U.S. 209 [51 S.Ct. 453, 75 L.Ed. 983]; *Chicago & N. W. Ry. Co.* v. *J. I. Case Plow Works*, 173 Wis. 237 [180 N.W. 846]; *Chicago, I. & L. Ry. Co.* v. *Peterson*, 168 Wis. 193 [169 N.W. 558]; *New York, N. H. & H. R. Co.* v. *California Fruit Growers Exchange*, 125 Conn. 241 [5 A.2d 353], citing *Louisville & N. R. Co.* v. *Central Iron & Coal Co.*, 265 U.S. 59 [44 S.Ct. 441, 68 L.Ed. 900], and other cases; *Spartan Mills* v. *Davis*, 126 S.C. 312 [119 S.E. 905]; *L. M. Kirkpatrick Co.* v. *I. C. R. Co.*, 190 Miss. 157 [195 So. 692].)

■ However, as we have noted, a contract to preserve the carrier's right and duty to collect lawful freight charges as against the running of the statute of limitations, when reasonably exercised, serves to prevent rather than create discrimination among shippers, and in our opinion, should not

be ·deemed violative of the language or purpose of the Interstate Commerce Act.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J. pro tem., concurred.

Appellant's petition for a rehearing was denied December 22, 1942.